## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

YASMIN PERKINS,                *

    *Plaintiff*,              *

    v.                   *      Civil Action No. RDB-24-1688

UNIVERSITY OF MARYLAND,     *
BALTIMORE SCHOOL OF NURSING,
                          *

    *Defendant*.

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

## MEMORANDUM OPINION

In this employment discrimination case, Plaintiff Yasmin Perkins ("Plaintiff" or "Perkins") raises federal and state claims against Defendant University of Maryland, Baltimore School of Nursing ("Defendant" or "UMB"), where she worked for one year as Assistant Director of Admissions between September 14, 2021, and October 1, 2022. (ECF No. 14 ¶ 12.) On June 10, 2024, Perkins initiated this action by filing in this Court a Complaint alleging employment discrimination claims under the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101, *et seq.*, and its Maryland analogue, the Maryland Fair Employment Practices Act ("MFEPA"), MD. CODE ANN., STATE GOV'T, §§ 20-606. (ECF No. 1 ¶ 2.) On October 31, 2024, UMB timely filed a Motion to Dismiss for Lack of Jurisdiction and for Failure to State a Claim (ECF No. 10). On December 23, 2024, Perkins filed an Amended Complaint (ECF No. 14) that replaced her ADA claims with claims under the Rehabilitation Act of 1973 ("Rehabilitation Act"), 29 U.S.C. § 701, *et seq.*, and reiterated her MFEPA claims. *See* (ECF No. 13 (explaining changes in Amended Complaint)). Specifically, in her Amended Complaint (ECF No. 14), Perkins alleges Failure to provide Reasonable Accommodations in violation of

1

Section 504 of the Rehabilitation Act, 29 U.S.C. § 794(a) (Count I); Retaliation in violation of the Rehabilitation Act (Count II); Disability Discrimination in violation of the MFEPA (Count III); and Retaliation in violation of the MFEPA (Count IV).  (ECF No. 14 at 8–14.)

Presently pending before this Court is Defendant's Motion to Dismiss for Lack of Jurisdiction and for Failure to State a Claim ("Defendant's First Motion to Dismiss") (ECF No. 10) as to Plaintiff's Original Complaint and Defendant's Motion to Dismiss for Lack of Jurisdiction and Failure to State a Claim ("Defendant's Second Motion to Dismiss") (ECF No. 15) as to Plaintiff's Amended Complaint.  Plaintiff has replied in Opposition to both of Defendant's Motions to Dismiss, *see* (ECF Nos. 13, 18-1), and Defendant has replied (ECF No. 21).  The parties' submissions have been reviewed, and no hearing is necessary.  Loc. R. 105.6 (D. Md. 2023).  For the reasons set forth below, Defendant's First Motion to Dismiss (ECF No. 10) is DENIED AS MOOT, and Defendant's Second Motion to Dismiss (ECF No. 15) is GRANTED.  Plaintiff's state claims under the Maryland Fair Employment Practices Act ("MFEPA") in Counts III and IV are DISMISSED WITHOUT PREJUDICE and without leave to amend, and Plaintiff's federal claims under the Rehabilitation Act in Counts I and II are DISMISSED WITHOUT PREJUDICE to the filing of an Amended Complaint within fifteen (15) days of the date of this Memorandum Opinion (i.e., by May 27th, 2025).

## BACKGROUND

In ruling on a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), this Court "accept[s] as true all well-pleaded facts in a complaint and construe[s] them in the light most favorable to the plaintiff." *Wikimedia Found. v. Nat'l Sec. Agency*, 857 F.3d 193, 208 (4th Cir. 2017) (citing *SD3, LLC v. Black & Decker (U.S.), Inc.*, 801 F.3d 412, 422 (4th Cir.

2015)).  Except where otherwise indicated, the following facts are derived from Plaintiff's

Amended Complaint and accepted as true for the purpose of Defendant's Second Motion to

Dismiss under Rule 12(b)(6).

On September 14, 2021, Perkins began working as Assistant Director of Admissions

for UMB, which she alleges to be a federally funded state program.  (ECF No. 14 ¶¶ 11–13.)

Perkins alleges that, at the time she was hired, UMB permitted all employees to work remotely.

(*Id.* ¶ 21.)   As Assistant Director of Admissions, Perkins managed customer services for

UMB's Admissions & Scholarship Department.  (*Id.* ¶ 14.)  According to Perkins, her position

required her to counsel students about available programs, educate students about admissions

and scholarship policies, and interpret admission and scholarship policies in individual

students' circumstances.  (*Id.*)

Perkins alleges that in January 2022, she developed a serious health condition related

to workplace stress that impaired her ability to return in person to the office.  (*Id.* ¶¶ 17–18.)

In February 2022, Perkins allegedly informed her supervisor, UMB's Director of the Office of

Admissions and Student Scholarships Sheena Jackson ("Director Jackson"), about her health

condition and her need to remain out of the office.  (*Id.* ¶ 18.)  Perkins alleges that she and

Director Jackson discussed UMB's guidelines related to reasonable accommodations and leave

pursuant to the Family and Medical Leave Act ("FMLA"), 29 U.S.C. § 2601, *et seq.*  (ECF No.

14 ¶ 19.)   Shortly thereafter, UMB approved Perkins' request for FMLA leave between

February 2022 and approximately April 29, 2022.  (*Id.* ¶ 20.)  Perkins alleges that at some point

after she requested FMLA leave, UMB asked employees in her department to return to in-

person work.  (*Id.* ¶ 21, 36.)  Upon the termination of her approved period of FMLA leave,

Perkins alleges that she requested further FMLA leave. (*Id.* ¶ 22.)

Perkins alleges that on or about May 3, 2022, UMB denied her request for further FMLA leave because she had "exhausted [her] FMLA leave entitlement in the applicable 12-month period" and would not be eligible for FMLA leave again until February 8, 2023. (*Id.*) At UMB's advice, Perkins requested a leave extension as an accommodation for her disability, and UMB provided an ADA accommodation of unpaid leave from May 10, 2022, until July 5, 2022. (*Id.* ¶¶ 23–24.) Perkins alleges that, with UMB's approval, she returned to telework on a reduced schedule of twenty hours per week on July 6, 2022. (*Id.* ¶ 25.)

Perkins alleges that remote work was a reasonable accommodation that enabled her to perform the essential functions of her position. (*Id.* ¶ 26.) According to Perkins, however, on or about July 14, 2022, UMB abruptly revoked her remote access, which impeded her ability to complete her job duties. (*Id.* ¶ 35.) Perkins alleges that she was humiliated to learn from UMB's Information Technology Department ("IT Department") that Director Jackson had advised the IT Department that Perkins' remote access had been removed and she was required to return her telework equipment because personnel in her department were no longer permitted to work from home. (*Id.* ¶ 36.) Perkins alleges that she raised these issues to UMB's Human Resources ("HR") representative, Karen Jarrell ("Ms. Jarrell"), but Ms. Jarrell routinely scheduled meetings with Perkins at times when she was on leave. (*Id.* ¶ 37–38.) Perkins alleges that Ms. Jarrell intentionally did not attend the meetings that she scheduled. (*Id.* ¶ 38.)

Perkins alleges that on or about August 1, 2022, UMB's Diversity, ADA, and Affirmative Action Administrator, Sheila Blackshear, advised her that her approved telework

accommodations had concluded, and she should contact her supervisor to schedule a return-to-work date.  (*Id.* ¶ 27.)  According to Perkins, UMB was able to accommodate her remote work and knew of her serious health condition but still required her to report to work in-person without adequate explanation.  (*Id.* ¶¶ 39–44.)  At some point thereafter but prior to her return-to-work date, Perkins alleges that she was hospitalized for something unrelated to her remote working conditions.[1]  (*Id.* ¶ 28.)

Perkins alleges that she informed UMB of the hospitalization and provided a Certification and Letter of Medical Necessity from her medical doctor, Kendrick Gwynn, which indicated that her serious health condition required her to work remotely for an additional two weeks.  (*Id.* ¶ 29.)  Rather than granting Perkins' request to telework, UMB allegedly granted an ADA accommodation of another unpaid leave of absence until August 12, 2022.  (*Id.* ¶ 30.)  According to Perkins, on or about August 12, 2022, UMB denied her request for a reasonable accommodation of another two-week unpaid leave followed by temporary telework and revoked her accommodation such that she had to return to work in person.  (*Id.* ¶¶ 31–32.)  Perkins alleges that permitting her to telework would not have imposed undue hardship on UMB or impaired its operations.  (*Id.* ¶ 33.)

Perkins alleges that after she was required to return to work in-person in August 2022, she repeatedly contacted UMB's HR Department to notify HR representatives that "the on-

---

[1]  Later in her Amended Complaint, Perkins again references being hospitalized "[w]hile working remotely and prior to her schedule return to work date . . . in or about August 2022."  (ECF No. 14 ¶ 46.)  She again notes that this hospitalization was unrelated to her remote working conditions, and she again states that she "submitted documentation from her doctor that she required remote telework for an additional temporary period," but that request was denied.  (*Id.* ¶¶ 46–47.)  It is unclear whether Perkins intends to allege that she was hospitalized twice in August 2022 or whether her later reference to hospitalization in August 2022 refers to the same hospital visit and documentation.

site in-person accommodations were detrimental to her health." (*Id.* ¶ 45.) Perkins alleges that her concerns were not addressed, and UMB terminated her employment on October 1, 2022. (*Id.* ¶¶ 45, 48, 12.) Perkins alleges that she suffered severe physical, psychological, and emotional injury and incurred significant monetary losses due to UMB's actions. (*Id.* ¶ 49.)

Following her termination, Perkins filed a formal charge of discrimination with the Equal Employment Opportunity Commission ("EEOC"), alleging violations of the ADA. (*Id.* ¶ 6.) On March 8, 2024, the EEOC issued a Notice of Right to Sue,[2] which Perkins received on March 15, 2024. (*Id.* ¶ 8; ECF No. 1 ¶ 8.) On June 10, 2024, Perkins initiated the instant action by filing the original six-Count Complaint (ECF No. 1) in this Court alleging claims of (1) failure to engage in interactive process and failure to accommodate in violation of the ADA; (2) retaliation in violation of the ADA, 42 U.S.C. § 12103; (3) hostile work environment in violation of the ADA; (4) constructive discharge in violation of the ADA; (5) disability discrimination in violation of the MFEPA; and (6) retaliation in violation of the MFEPA. *See* (ECF No. 1). On October 31, 2024, UMB filed its First Motion to Dismiss (ECF No. 10), and on December 9, 2024, Perkins filed a Response in Opposition (ECF No. 13) and an Amended Complaint (ECF No. 14).

In her Amended Complaint (ECF No. 14), Perkins alleges Failure to Provide Reasonable Accommodations in violation of Section 504 of the Rehabilitation Act (Count I); Retaliation in violation of Section 504 of the Rehabilitation Act (Count II); Disability

---

[2] The EEOC only issues Notice of Right to Sue letters if it is unable to conclude that there is reasonable cause to believe discrimination occurred. If the EEOC had concluded that there was reasonable cause to believe discrimination occurred, the parties would have received Letters of Determination. *See What You Can Expect After a Charge is Filed*, U.S. EQUAL EMP. OPPORTUNITY COMM'N, https://www.eeoc.gov/employers/process.cfm.

Discrimination in Violation of the MFEPA (Count III); and Retaliation in violation of the MFEPA (Count IV). (ECF No. 14 at 8–14.) On December 23, 2024, UMB filed its Second Motion to Dismiss for Lack of Jurisdiction and Failure to State a Claim (ECF No. 15). Perkins has responded in Opposition (ECF No. 18), and UMB has replied (ECF No. 21). This matter is now ripe for review.

## STANDARDS OF REVIEW

### I.    Motion to Dismiss for Lack of Jurisdiction

A motion to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1) of the Federal Rules of Civil Procedure challenges a court's authority to hear the matter brought by a complaint. *See Davis v. Thompson*, 367 F. Supp. 2d 792, 799 (D. Md. 2005). A challenge to jurisdiction under Rule 12(b)(1) may proceed either as a facial challenge, asserting that the allegations in the complaint are insufficient to establish subject matter jurisdiction, or as a factual challenge, asserting "that the jurisdictional allegations of the complaint [are] not true." *Kerns v. United States*, 585 F.3d 187, 192 (4th Cir. 2009) (quoting *Adams v. Bain*, 697 F.2d 1213, 1219 (4th Cir. 1982)). In this case, UMB raises a facial challenge based on the doctrine of sovereign immunity, which "deprives federal courts of jurisdiction to hear claims." *Cunningham v. Gen. Dynamics Info. Tech., Inc.*, 888 F.3d 640, 649 (4th Cir. 2018) (quoting *Ackerson v. Bean Dredging LLC*, 589 F.3d 196, 207 (5th Cir. 2009)).

In determining a facial challenge, the court "is to regard the pleadings' allegations as mere evidence on the issue, and may consider evidence outside the pleadings without converting the proceeding to one for summary judgment." *Richmond, Fredericksburg & Potomac R. Co. v. United States*, 945 F.2d 765, 768–69 (4th Cir. 1991). As Judge Hollander of this Court

has explained, where a defendant raises a facial challenge to jurisdiction, "the defendant must show that a complaint fails to allege facts upon which subject-matter jurisdiction can be predicated." *Amador v. Mnuchin*, 476 F. Supp. 3d 125, 139 (D. Md. 2020) (quoting *Hutton v. Nat'l Bd. of Exam'rs, Inc.*, 892 F.3d 613, 620–21 (4th Cir. 2018)).

## II.    Motion to Dismiss for Failure to State a Claim

A complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2).  Rule 12(b)(6) of the Federal Rules of Civil Procedure authorizes the dismissal of a complaint if it fails to state a claim upon which relief can be granted.  The purpose of Rule 12(b)(6) is "to test the sufficiency of a complaint and not to resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Presley v. City of Charlottesville*, 464 F.3d 480, 483 (4th Cir. 2006).

To survive a motion under Rule 12(b)(6), a complaint must contain facts sufficient to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 684 (2009) (quoting *Bell Atl., Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  Under the plausibility standard, a complaint must contain "more than labels and conclusions" or a "formulaic recitation of the elements of a cause of action." *Twombly*, 550 U.S. at 555; *see Painter's Mill Grille, LLC v. Brown*, 716 F.3d 342, 350 (4th Cir. 2013).  A complaint need not include "detailed factual allegations." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555).  A complaint must, however, set forth "enough factual matter (taken as true) to suggest" a cognizable cause of action, "even if . . . [the] actual proof of those facts is improbable and . . . recovery is very remote and unlikely." *Twombly*, 550 U.S. at 556 (internal quotations omitted).  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" to plead a

claim. *Iqbal*, 556 U.S. at 678; *see A Soc'y Without a Name v. Virginia*, 655 F.3d 342, 346 (4th. Cir. 2011).

## ANALYSIS

### I.  UMB's First Motion to Dismiss

"Ordinarily, an amended complaint supersedes those that came before it." *Goodman v. Diggs*, 986 F.3d 493, 498 (4th Cir. 2021).  This Court has held that the filing of an Amended Complaint renders moot pending motions to dismiss the original complaint as long as the Amended Complaint addresses the issues raised in the prior motion to dismiss.  *See Howard v. Ocwen Loan Servicing, Inc.*, Civ. No. RDB-18-3296, 2019 WL 4750333, at *2 (D. Md. Sept. 30, 2019); *Verderamo v. Mayor & City Council of Balt.*, 4 F. Supp. 3d 722, 724 n.3 (D. Md. 2014).  In this case, Perkins' Amended Complaint eliminated her original ADA claims, added claims under the Rehabilitation Act, and included new factual details as to her MFEPA claims.[3]  *See* (ECF No. 14).  UMB's Second Motion to Dismiss raises some of the same sovereign immunity arguments as its First Motion to Dismiss, particularly in reference to Perkins' claims under the MFEPA.  *Compare* (ECF No. 10-1) *and* (ECF No. 15-1).  Even so, Perkins has substantively responded only to UMB's Second Motion to Dismiss.  *Compare* (ECF No. 13) *and* (ECF No. 18-1).  Accordingly, this Court will consider all sovereign immunity arguments advanced by

---

[3]  In violation of this Court's Local Rules, Perkins did not file a redline version of her Amended Complaint. *See* (ECF No. 14); Loc. R. 103.6(c) (D. Md. 2023) (requiring parties to include "(1) a clean copy of the amended pleading and (2) a copy of the amended pleading in which the stricken material has been lined through or enclosed in brackets and new material has been underlined or set forth in bold-faced type."); *see also Jackson v. Beard*, 828 F.2d 1077, 1078 (4th Cir. 1987) (recognizing Local Rules consistent with the Federal Rules of Civil Procedure are binding upon the parties and the court that promulgated them).  Instead, she included a summary of the proposed changes in her Opposition to Defendant's First Motion to Dismiss. *See* (ECF No. 13).  Upon the Court's review of the Original Complaint and Amended Complaint, it appears that Perkins added factual detail to her MFEPA claims but did not otherwise change those claims.

UMB in support of dismissing Perkins' MFEPA claims, but UMB's First Motion to Dismiss (ECF No. 10) will be DENIED AS MOOT.[4]  *See, e.g.*, *Reese v. H&S Bakery, Inc.*, Civ. No. RDB-17-3085, 2018 WL 4005226, at *4 (D. Md. Aug. 22, 2018) (construing as moot first motion to dismiss that raised same arguments as second motion).

## II.    UMB's Second Motion to Dismiss

In its Second Motion to Dismiss (ECF No. 15), UMB challenges this Court's jurisdiction to adjudicate Perkins' state claims under the MFEPA and argues that each of her claims is insufficiently pled under Rule 12(b)(6).  The Court addresses each challenge in turn.

### A.  Lack of Subject Matter Jurisdiction: Counts III and IV

UMB contends that the doctrine of sovereign immunity deprives this Court of jurisdiction to hear Perkins' Counts III and IV, which allege claims of discrimination and retaliation under the MFEPA.  (ECF No. 15-1 at 5–8.)  Specifically, UMB asserts that the Eleventh Amendment to the U.S. Constitution entitles states and their agencies—including "instrumentalities" or "arms of the state"—to sovereign immunity from suit by their citizens. (*Id.* at 5–6.)  UMB contends that numerous Maryland state courts, this Court, and the U.S. Court of Appeals for the Fourth Circuit have held that the University System of Maryland, including UMB, is an instrumentality or arm of the State of Maryland such that it is immune from suit.  *See* (*id.* at 6 (collecting cases)).  UMB asserts that none of the exceptions to sovereign immunity apply in this case and emphasizes that the Maryland General Assembly has not

---

[4]  Ordinarily, failure to respond to an opposing party's argument in a motion to dismiss constitutes waiver of that point.  *See Ferdinand-Davenport v. Child.'s Guild*, 742 F. Supp. 2d 772, 777 (D. Md. 2010).  In this case, however, neither party has raised any argument regarding mootness or waiver.  Moreover, because both of UMB's Motions to Dismiss raise similar sovereign immunity arguments separated by Perkins' intervening Amended Complaint, Perkins' Opposition to UMB's Second Motion to Dismiss substantively addresses the sovereign immunity arguments in UMB's First Motion to Dismiss.

waived sovereign immunity for suits arising under the MFEPA. (*Id.* at 7, 7 n.2.) In Opposition (ECF No. 18-1), Perkins contends that the Supreme Court of Maryland has held that the MFEPA includes a waiver of Maryland's sovereign immunity. *See* (ECF No. 18 at 3 (citing *Williams v. Morgan State Univ.*, 300 A.3d 54, 64–65 (Md. 2023)). In Reply (ECF No. 21), UMB argues that a waiver of immunity in state court is distinct from a waiver of Eleventh Amendment immunity in federal court. (ECF No. 21 at 2.)

As both the Fourth Circuit and the Supreme Court have recognized, "[a]lthough a State's general waiver of sovereign immunity may subject it to suit in state court, it is not enough to waive the immunity guaranteed by the Eleventh Amendment." *Pense v. Md. Dep't of Pub. Safety & Corr. Servs.*, 926 F.3d 97, 101 (4th Cir. 2019) (quoting *Atascadero State Hosp. v. Scanlon*, 473 U.S. 234, 241 (1985)). That is, a state's waiver of immunity in its own courts is not sufficient to waive its Eleventh Amendment immunity to suit in federal court, which is waived "only where stated by the most express language or by such overwhelming implication from the text as [will] leave no room for any other reasonable construction." *Id.* (alteration in original) (quoting *Port Auth. Trans-Hudson Corp. v. Feeney*, 495 U.S. 299, 305 (1990)). The Fourth Circuit in the *Pense* case clearly held that the MFEPA's "consent to suit provision does not 'specify the State's intention to subject itself to suit in *federal court*'" and "cannot be read to waive the State's Eleventh Amendment immunity." *Id.* (quoting *Atascadero*, 473 U.S. at 241) (abrogating cases in which this Court held MFEPA waived Maryland's Eleventh Amendment immunity to suit in federal court). Under this reasoning, Perkins' assertion that the Supreme Court of Maryland has held that the MFEPA waives Maryland's sovereign immunity to suit in state courts is inapposite, and her MFEPA claims are barred by sovereign immunity under the

Eleventh Amendment.[5]   Sovereign immunity deprives this Court of jurisdiction to hear

Perkins' MFEPA claims.   *Cunningham*, 888 F.3d at 649.   Accordingly, Defendant's Second

Motion to Dismiss is GRANTED as to the MFEPA claims in Counts III and IV on the basis

that this court lacks subject matter jurisdiction over those state claims.   Counts III and IV are

DISMISSED.[6]

### B.  Failure to State a Claim Under Rule 12(b)(6): Counts I and II

The Rehabilitation Act prohibits discrimination on the basis of disability by "any

program or activity receiving Federal financial assistance . . . ."   29 U.S.C. § 794(a).   In its

Second Motion to Dismiss, UMB does not dispute that it is a federally funded institution

subject to the Rehabilitation Act but argues that Perkins has not sufficiently alleged her

Rehabilitation Act claims in Counts I and II.   (ECF No. 15-1 at 8–12.)   Specifically, UMB

asserts that the allegations in Perkins' Amended Complaint fail to demonstrate failure to

accommodate because she fails to allege that she was otherwise qualified for the position *and*

could perform the essential functions of her job with reasonable accommodations.   (*Id.* at 10–

11.)   Perkins has dropped her ADA claims, and her Amended Complaint alleges failure to

accommodate and retaliation under the Rehabilitation Act.   (ECF No. 14.)   UMB contends

that, however, that under Fourth Circuit precedent claims under the ADA and the

Rehabilitation Act "require a plaintiff to demonstrate the same elements to establish liability."

---

[5]  The remaining exceptions to sovereign immunity—abrogation by congress or actions seeking "prospective injunctive relief against state officials acting in violation of federal law"—do not apply to Perkins' MFEPA claims, which arise under Maryland law.   *Lee-Thomas v. Prince George's Cnty. Pub. Schs.*, 666 F.3d 244, 248–49 (4th Cir. 2012).

[6]  Because this dismissal is for lack of jurisdiction, it must be without prejudice.   Even so, any amendment would be futile because there is no set of facts that Perkins can allege in this Court that would demonstrate that Maryland has waived its Eleventh Amendment immunity as to the MFEPA claims before this Court.

(ECF No. 15-1 at 8 (quoting *Halpern v. Wake Forest Univ. Health Scis.*, 669 F.3d 454, 461 (4th Cir. 2012).  For this reason, UMB uses language arising under the ADA by referencing whether Perkins has sufficiently alleged that she is a "qualified individual."

Although courts interpret together the ADA and Rehabilitation Act, the Fourth Circuit has recognized slightly different elements of claims of failure to accommodate under the Rehabilitation Act and discrimination under the ADA.  A claim for failure to accommodate under the Rehabilitation Act requires a plaintiff to allege "(1) that she was an individual with a disability within the meaning of the statute; (2) that the employer had notice of her disability; (3) that with reasonable accommodation she could perform the essential functions of the position; (4) that the employer refused to make such accommodations."  *Smith v. CSRA*, 12 F.4th 396, 414 (4th Cir. 2021) (quoting *Jacobs v. N.C. Admin. Off. Cts.*, 780 F.3d 562, 579 (4th Cir. 2015)).  A claim of discrimination under the ADA requires a plaintiff to allege that (1) she has a disability; (2) she is a qualified individual for the employment in question; and (3) her employer took adverse employment action against her because of her disability.  *Id.* at 412. Under the ADA, a "qualified individual" is defined as "an individual who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires."  42 U.S.C. § 12111(8).  This Court adopts the elements of failure to accommodate as stated by the Fourth Circuit in *Smith v. CSRA*, 12 F.4th 396 (4th Cir. 2021).  Where UMB references a "qualified individual," the Court construes this language to challenge whether Perkins has sufficiently alleged that with reasonable accommodation she was able to perform the essential functions of her position.

UMB further contends that Perkins required multiple leaves of absence even with the telework accommodation such that she has not alleged the elements of failure to accommodate under the Rehabilitation Act. (*Id.* at 10–11.) Similarly, UMB asserts that Perkins fails to allege facts that demonstrate a causal relationship between the alleged adverse actions and her protected activity as required to claim retaliation under the Rehabilitation Act. (*Id.* at 11–13.) In Opposition, Perkins argues that she performed the essential functions of her job while working remotely and emphasizes that her department worked remotely when she began the position. (ECF No. 18-1 at 6–7.) She further contends that both the close temporal proximity between her request for accommodation and her termination and UMB's sudden requirement that she return to work in person despite her approved telework accommodation sufficiently allege causation. (*Id.* at 9–10.)

i.    **Failure to Accommodate (Count I)**

"To establish a prima facie case of failure to accommodate, a plaintiff must show: '(1) that she was an individual with a disability within the meaning of the statute; (2) that the employer had notice of her disability; (3) that with reasonable accommodation she could perform the essential functions of the position; (4) that the employer refused to make such accommodations.'" *Smith v. CSRA*, 12 F.4th 396, 414 (4th Cir. 2021) (quoting *Jacobs v. N.C. Admin. Off. Cts.*, 780 F.3d 562, 579 (4th Cir. 2015)). The plaintiff bears the burden to both identify an accommodation and prove that it is reasonable. *Id.* "Employment discrimination claims brought under Section 504 are evaluated using the same standards as those 'applied under [T]itle I of the Americans with Disabilities Act of 1990." *Reyazuddin v. Montgomery Cnty., Md.*, 789 F.3d 407, 415 (4th Cir. 2015) (quoting 29 U.S.C. § 794(d)). For the purposes of its

14

Second Motion to Dismiss, UMB does not dispute that Perkins had a qualifying disability and it had notice of her disability. (ECF No. 15 at 9.) Rather, the parties dispute only the third element of failure to accommodate: whether Perkins has sufficiently alleged that with reasonable accommodation she could perform the essential functions of her position as Assistant Director of Admissions.

As both parties agree, a reasonable accommodation under the Rehabilitation Act "is by its terms most logically construed as that which presently, or in the immediate future, enables the employee to perform the essential functions of the job in question." (ECF No. 18-1 at 6; ECF No. 21 at 4 (both quoting *Myers v. Hose*, 50 F.3d 278, 283 (4th Cir. 1995).) The Fourth Circuit has held "that a reasonable accommodation does not require the [defendant] to wait indefinitely for [the plaintiff's] medical conditions to be corrected . . . ." *Myers*, 50 F.3d at 283 (citing *Fuller v. Frank*, 816 F.2d 558, 562 (9th Cir. 1990)). As Judge Chuang of this Court has explained, "[w]here the requested accommodation is an alternative work assignment or temporary leave, a plaintiff must allege that if such [accommodation] were granted, . . . '[s]he could have performed the essential functions of h[er] job.'" *Carter v. Montgomery Cnty, Md.*, Civ. No. TDC-18-2249, 2019 WL 3804765, at *5 (D. Md. Aug. 13, 2019) (quoting *Wilson v. Dollar Gen. Corp.*, 717 F.3d 337, 346 (4th Cir. 2013)).

In her Amended Complaint, Perkins fails to sufficiently allege that she could perform the essential functions of her job with a telework accommodation. Perkins alleges that, *while subject to remote work*, she required two unpaid leaves of absence—one two-month unpaid leave between May 2022 and July 5, 2022, and one two-week unpaid leave in August 2022—due to her serious health condition. (ECF No. 14 ¶¶ 22–24, 54, 27, 28.) These unpaid leaves of

absence occurred immediately following her two-month FMLA leave between February 2022 and April 29, 2022, during which period her position was subject to remote work.  (*Id.* ¶¶ 17–28.)  In sum, Perkins' Amended Complaint alleges that while she was authorized to work remotely between February and August 2022, she was able to work only ten days in May and otherwise required leave due to her disability.  Accordingly, under the facts Perkins has alleged, she was not able to perform the essential functions of her job with the reasonable remote-work accommodation.

Perkins' assertion that her job was capable of remote performance because her department worked remotely between 2021 and 2022 is not sufficient to overcome her factual allegations that she could not perform her work remotely between February and August 2022.  The third element of failure to accommodate is specific to the plaintiff.  It asks whether Perkins was able to perform the essential functions of her job with the telework accommodation.  *See Carter*, 2019 WL 3804765, at *5.  Perkins' allegations demonstrate that she was not able to perform any of the functions of her position with appropriate accommodation because she alleges that she required repeated leaves of absence during a period in which she was authorized to telework.  Furthermore, Perkins' bare allegation that her job requirements were capable of remote performance is a "threadbare recital[]" of the third element of failure to accommodate and does not suffice to plead such a claim.  *Iqbal*, 556 U.S. at 678.  Even construing all facts in the light most favorable to Perkins, she has not alleged facts sufficient to show that she was able to perform the essential functions of her job with a telework accommodation.  For this reason, UMB's Second Motion to Dismiss is GRANTED, and Count I is DISMISSED WITHOUT PREJUDICE.

### ii.    Retaliation Under Rehabilitation Act (Count II)

As this Court has previously explained, "[t]he Rehabilitation Act incorporates the ADA's anti-retaliation provision, which in turn is substantially identical to Title VII's anti-retaliation provisions." *Brady v. Bd. of Educ. of Prince George's Cnty.*, 222 F. Supp. 3d 459, 474 (D. Md. 2016). Thus, courts interpret claims of retaliation under the Rehabilitation Act in a manner consistent with the ADA and Title VII. *Id.* (citing *Haines v. Donahoe*, Civ. No. ELH-10-0293, 2012 WL 3595965, at *10 (D. Md. Aug. 10, 2012), *aff'd* 538 F. App'x 329 (4th Cir. 2013)); *see also Lucas v. VHC Health*, 128 F.4th 213, 225 (4th Cir. 2025). For this reason, once a plaintiff has established the elements of retaliation under the Rehabilitation Act, courts apply the burden-shifting standard elucidated in *McDonnell Douglas Corporation v. Green*, 411 U.S. 792 (1973). A prima facie claim of retaliation under the Rehabilitation Act requires the plaintiff to allege that (1) she engaged in a protected activity; (2) her employer took adverse employment action against her; and (3) the protected activity was causally connected to the adverse action. *Madison v. Housing Auth. of Balt. City*, Civ. No. RDB-21-997, 2021 WL 2936321, at *4 (D. Md. July 13, 2021) (citing *Hoven-Lewis v. Caldera*, 249 F.3d 259, 272–74 (4th Cir. 2001)). As explained below, Perkins has not met her burden to allege facts sufficient to establish that her protected activity was causally connected to the adverse action alleged.[7]

To the extent that UMB disputes the adverse action element of retaliation, Perkins has met her burden to allege termination as an adverse action. As Judge Blake of this Court has explained, "[i]n the context of a retaliation claim, a plaintiff can demonstrate that an employer

---

[7] Like the parties, this Court assumes that Perkins has sufficiently alleged protected activity by alleging that she requested a telework accommodation and protected unpaid and FMLA leave.

acted adversely by showing that 'a reasonable employee would have found the challenged action materially adverse, which in this context means it well might have dissuaded a reasonable worker from [engaging in protected activity].'"[8] *Johnson v. Md. Transit. Admin.*, Civ. No. CCB-19-2523, 2021 WL 809768, at *5 (D. Md. Mar. 2, 2021) (quoting *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006)); *see also Jennings v. Frostburg State Univ.*, 679 F. Supp. 3d 240, 280–81 (D. Md. 2023) (collecting cases defining adverse actions in retaliation claims); *see also Strothers v. City of Laurel, Md.*, 895 F.3d 317, 372 (4th Cir. 2018) (explaining an adverse action "need not be employment or workplace-related . . . ."). Termination of employment constitutes an adverse action. *Boone v. Goldin*, 178 F.3d 253, 255 (4th Cir. 1999) *abrogated by Muldrow v. City of St. Louis, Missouri*, 601 U.S. 346 (2024). However, "[c]ourts in this circuit have held than an employer's refusal to allow a flex schedule or telework arrangement, without more, does not rise to the level of an adverse employment action." *Tafazzoli v. Nuclear Regul. Comm'n*, 2020 WL 7027456, at *13 (D. Md. Nov. 30, 2020); *see also Terry v. Perdue*, Civ. No. JKB-18-0031, 2018 WL 4494883, at *5 (D. Md. Sept. 19, 2018) (collecting cases).

Perkins alleges two adverse actions: (1) revocation of her telework accommodation on July 14, 2022; and (2) termination of her employment on October 1, 2022. (ECF No. 14 ¶¶ 69–71, 77.) UMB does not dispute that termination satisfies the adverse action element of

---

[8] As Judge Chasanow of this Court has noted, "[t]he 'adverse action' standards for Rehabilitation Act discrimination and retaliation claims mirror the standards for Title VII discrimination and retaliation claims." *Condillac v. Califf*, Civ. No. DKC-20-1794, 2023 WL 2139794, at *3 n.6 (D. Md. Feb. 21, 2023) (citing *Wonasue v. Univ. of Md. Alumni Ass'n*, 984 F. Supp. 2d 480, 491 (D. Md. 2013)). In 2024, the Supreme Court decided *Muldrow v. City of St. Louis, Missouri*, 601 U.S. 346 (2024), in which it altered the standard for "adverse action" in Title VII discrimination actions by holding that plaintiffs may satisfy the adverse action element by showing "some harm" without showing such harm is "material." The Supreme Court explicitly distinguished the materiality requirement applied under Title VII's anti-retaliation provision from its anti-discrimination provision. *Id.* at 358. Accordingly, the "material adverse action" standard remains applicable to retaliation claims brought under the Rehabilitation Act.

retaliation but argues that Perkins' claim of revocation of her accommodation should be reframed as a claim of denial of an accommodation. (ECF No. 15-1 at 11–12; ECF No. 21 at 5–6.) At the pleading stage, the Court construes all facts in the light most favorable to Perkins, and the language of her Amended Complaint clearly references the *revocation* of her existing telework accommodation rather than an outright denial of a request to telework. (ECF No. 14 ¶¶ 35, 39–40.) Even so, as explained above, neither the denial of an existing accommodation nor the revocation of a telework accommodation are adverse actions. *See Leckie v. Bd. of Educ. Montgomery Cnty.*, Civ. No. TDC-23-0299, 2023 WL 8809310, at \*7 (D. Md. Dec. 19, 2023) (collecting cases in which this Court held denial of request for accommodation is not materially adverse action); *Perdue*, 2018 WL 4494883, at \*5 (D. Md. Sept. 19, 2018) (collecting cases holding revocation of telework is not adverse action). For this reason, Perkins sufficiently alleges only termination as an adverse action.

Although Perkins sufficiently alleges termination as an adverse action, she fails to sufficiently allege a causal relationship between the protected activity—requesting a telework accommodation—and her termination. As the Fourth Circuit has recognized, "very little evidence of a causal connection is required to establish a prima facie case of retaliation." *Smith*, 12 F.4th at 417 (quoting *Roberts v. Glenn Indus. Grp., Inc.*, 998 F.3d 111, 127 (4th Cir. 2021)); *see also Strothers*, 895 F.3d at 335. In the context of a retaliation claim, a plaintiff may allege causation by (1) alleging facts that "suggest[] that the adverse action occurred because of the protected activity" or (2) by demonstrating that "the adverse act bears sufficient temporal proximity to the protected activity." *Jennings*, 679 F. Supp. 3d at 281 (first quoting *Roberts*, 998 F.3d at 123; and then quoting *Laurent-Workman v. Wormuth*, 54 F.4th 201, 218 (4th Cir. 2022)).

In this case, Perkins alleges no facts that suggest causation but argues that the seven-week gap between her request to telework and her termination sufficiently demonstrates causation. (ECF No. 18-1 at 8–9.)

"The cases that accept mere temporal proximity between an employer's knowledge of protected activity and adverse employment action as sufficient evidence of causality to establish a prima facie case uniformly hold that temporal proximity must be 'very close.'" *Clark Cnty. Sch. Dist. v. Breeden*, 532 U.S. 268, 273 (2001). Although the Fourth Circuit has rejected a "'bright line rule' for temporal proximity," where a plaintiff relies on temporal proximity alone, "a lapse of two months between the protected activity and the adverse action is 'sufficiently long as to weaken significantly the inference of causation.'" *Roberts*, 998 F.3d at 126–27 (quoting *Horne v. Reznick Fedder & Silverman*, 154 F. App'x 361, 364 (4th Cir. 2005)). In this case, Perkins argues that only seven weeks elapsed between her protected activity—requesting a telework accommodation on August 12, 2022—and her termination on October 1, 2022. (ECF No. 18-1 at 8–9.) Even construing the facts in the light most favorable to Perkins, however, her Amended Complaint does not sufficiently allege the required temporal proximity.

The causal relationship element of retaliation asks not whether the last instance of protected activity occurred in close temporal proximity to the adverse action but whether the time that elapsed "between the employer's *knowledge of protected activity* and the alleged retaliation" is sufficiently close to support a causal relationship. *Roberts*, 998 F.3d at 127 (emphasis added). In this case, construing the facts alleged in the light most favorable to Perkins, UMB had knowledge of her protected activity of requesting a reasonable ADA

accommodation when she took her first ADA accommodation of unpaid leave on May 10, 2022. (ECF No. 18-1 at 8; ECF No. 14 ¶ 24.) Thus, five months elapsed between UMB's knowledge of Perkins' protected activity in May 2022 and her termination on October 1, 2022. As the Fourth Circuit has repeatedly recognized, absent other evidence of a causal relationship, a lapse of five months is insufficient to establish causation under the Rehabilitation Act. *See Roberts*, 998 F.3d at 127 (collecting cases). Perkins alleges no other facts that would support a retaliatory motive for her termination in October 2022. Absent such evidence, the five-month lapse between UMB's knowledge of her protected activity and her termination is insufficient to allege causation. *See id.* Accordingly, UMB's Second Motion to Dismiss is GRANTED as to Perkins' retaliation claim, and Count II is DISMISSED WITHOUT PREJUDICE.

### III.    Plaintiff's Amended Complaint is Dismissed Without Prejudice

A plaintiff may amend her complaint as a matter of course within twenty-one days of serving it or twenty-one days "after service of a responsive pleading or 21 days after service of a motion under Rule 12(b), (e), or (f), whichever is earlier." FED. R. CIV. P. 15(a)(1). "In all other cases, a party may amend its pleading only with the opposing party's written consent or the court's leave." FED. R. CIV. P. 15(a)(2). "[W]hen the district court believes a deficiency in a complaint can be cured, it should say so and grant leave to amend." *Britt v. DeJoy*, 45 F.4th 790, 796 (4th Cir. 2022). Otherwise, "when a district court dismisses a complaint or all claims without providing leave to amend . . . the order dismissing the complaint is final and appealable." *Id.*

As to Plaintiff's Rehabilitation Act claims in Counts I and II, if Plaintiff possesses the facts to cure the manifest deficiencies addressed in this Memorandum Opinion, she may file a

Second Amended Complaint within fifteen (15) days of the date of this Opinion (i.e., by May 27th, 2025). Such an Amended Complaint may still be subject to dismissal by reason of repeated failure to cure deficiencies or futility of the amendment. Accordingly, Counts I and II are DISMISSED WITHOUT PREJUDICE, but if a Second Amended Complaint is not filed within fifteen days of the date of this Memorandum Opinion, the dismissal will be WITH PREJUDICE.

As to the state claims under MFEPA in Counts III and IV, dismissal must be WITHOUT PREJUDICE because this Court lacks subject matter jurisdiction to address those claims due to Defendant's sovereign immunity. *See Southern Walk at Broadlands Homeowners Ass'n, Inc. v. OpenBand at Broadlands, LLC,* 713 F.3d 175, 185 (4th Cir. 2013) (collecting cases). Plaintiff does not have leave to amend Counts III and IV, however, because there is no set of facts she could allege that would afford this Court jurisdiction over those claims.

## CONCLUSION

For the foregoing reasons, UMB's Second Motion to Dismiss (ECF No. 15) is GRANTED, and Plaintiff's Amended Complaint (ECF No. 14) is DISMISSED WITHOUT PREJUDICE to the filing of a Second Amended Complaint as to the Rehabilitation Act claims in Counts I and II within fifteen days of the date of this Memorandum Opinion (i.e., by May 27th, 2025).

A separate Order follows.

/s/
_____
Richard D. Bennett
United States Senior District Judge

Dated: May 12th, 2025