IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| YASMIN PERKINS, | * |
| *Plaintiff*, | * |
| v. | *   Civil Action No. RDB-24-1688 |
| UNIVERSITY OF MARYLAND, BALTIMORE, | * |
| | * |
| *Defendant*. | |

\* \* \* \* \* \* \* \* \* \* \* \* \*

## MEMORANDUM OPINION

Plaintiff Yasmin Perkins worked as the Assistant Director of Admissions for Defendant University of Maryland, Baltimore's School of Nursing (the "University") from September 14, 2021, until she was terminated on October 1, 2022. Beginning in February 2022 and lasting at least as late as August of that year, Perkins sought from the University various accommodations for health conditions, including one related to workplace stress. The main accommodation she sought was the ability to work remotely from her home. The University granted some of those requests and approved leave under the Family Medical Leave Act, 29 U.S.C. §§ 2601 *et seq.*, from February 2022 until April 29, 2022. Eventually the University revoked Perkins's work-from-home accommodation and required her to return to the office. As a result of her refusal to return to work, the University terminated Perkins's employment on October 1, 2022.

Over the past nearly eighteen months, Perkins has filed three complaints in this case. She initiated the lawsuit with the original Complaint on June 10, 2024. (ECF No. 1) After the University moved to dismiss the case for lack of subject matter jurisdiction and failure to state

1

a plausible claim (ECF No. 10), Perkins filed her First Amended Complaint on December 9, 2024. (ECF No. 14) The University again moved to dismiss for lack of subject matter jurisdiction and failure to state a plausible claim. (ECF No. 15) This Court granted dismissal of the First Amended Complaint with partial leave to amend two of the counts on May 12, 2025, setting a deadline to do so of May 27, 2025. (ECF No. 22)

On May 27, 2025, the deadline for amending, Plaintiff filed a third time. Her Second Amended Complaint (ECF No. 24) charges the University with two violations of Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794. (*Id.*) Count I alleges a failure to accommodate Perkins's qualifying disability by allowing her to work remotely. (*Id.* ¶¶ 51–70) Count II claims that the University retaliated against her protected activity of seeking reasonable accommodations for her disability by revoking that accommodation; knowingly subjecting Perkins to working conditions that denied her a meaningful employment opportunity; and subsequently terminating her. (*Id.* ¶¶ 71–91) Once again, the University has moved to dismiss this case for failure to state a plausible claim. (ECF No. 25) That Motion is presently pending. Perkins has been afforded every opportunity to plead a plausible claim in this case and has failed to do so. The Court has reviewed the parties' submissions; no hearing is necessary. *See* Loc. R. 105.6 (D. Md. 2025). For the following reasons, the University's Motion to Dismiss the Second Amended Complaint (ECF No. 25) is GRANTED. Perkins's Second Amended Complaint (ECF No. 24) is DISMISSED WITH PREJUDICE.

## BACKGROUND

When ruling on a motion to dismiss, the Court accepts all well-pleaded facts in the complaint as true and draws all reasonable inferences from them in the light most favorable

to the plaintiff. *Wikimedia Found. v. Nat'l Sec. Agency*, 857 F.3d 193, 208 (4th Cir. 2017) (citing *SD3, LLC v. Black & Decker (U.S.) Inc.*, 801 F.3d 412, 422 (4th Cir. 2015)). The Court takes the facts below from the Second Amended Complaint (ECF No. 24) and accepts them as true solely for the purpose of ruling on this Motion (ECF No. 25).

## I.    Factual History

On September 14, 2021, Perkins began working as Assistant Direction of Admissions for Defendant the University of Maryland, Baltimore's School of Nursing. (ECF No. 24 ¶¶ 12–13) The University is a federally-funded state program for the purposes of 29 U.S.C. § 794(a)–(b). (*Id.* ¶ 11) In that role, Perkins managed customer and guidance services to prospective and returning students on behalf of the University's Admissions & Scholarship Department. (*Id.* ¶ 14) Her position also required her to counsel prospective students about available programs at the School of Nursing; educate prospective students about admissions and scholarship policies; and, when necessary, interpret such policies for individual prospective students. (*Id.*) Perkins alleges that, when she was hired, the University permitted all employees, including her, to work remotely. (*Id.* ¶ 21) Ultimately, the University began to require employees to return to in-person work, but on a hybrid, primarily remote schedule.

In January 2022, Perkins developed a health condition related to workplace stress, which she alleges impaired her ability to return to in-person work. (*Id.* ¶¶ 16–17) In February of that year, Perkins informed her supervisor, the University's Director of the Office of Admissions and Student Scholarships Sheena Jackson, about her condition and her need to be out of the office. (*Id.* ¶ 18) Jackson and Perkins discussed the University's guidelines for requesting reasonable accommodations and leave under the Family Medical Leave Act

("FMLA"), 29 U.S.C. §§ 2601 *et seq.* (*Id.* ¶ 19). Perkins then made a request for FMLA leave, which the University approved. (*Id.* ¶ 20) Perkins was on FMLA leave from February 2022 to approximately April 29, 2022. (*Id.*)

As her FMLA leave was coming to an end, Perkins requested further FMLA leave, which the University denied on May 3, 2022. (*Id.* ¶ 22) In its denial, the University informed Plaintiff that she had "exhausted [her] FMLA leave entitlement in the applicable 12-month period" and would not be eligible again for more leave until February 8, 2023. (*Id.*) At the University's advice, Perkins sought a leave extension as an accommodation for a disability under the Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12101–12117. (*Id.* ¶ 23) It provided Perkins with an ADA accommodation of unpaid leave from May 10 through July 5, 2022. (*Id.* ¶ 24) Finally, on July 6, Perkins returned to work under a new, University-approved, ADA accommodation reducing her schedule to twenty hours per week of remote telework. (*Id.*)

After approximately one month on this reduced schedule, the University advised Perkins that the telework accommodation had ended and that she should contact the University to schedule a return-to-work date. (*Id.* ¶ 27) On August 1, 2022, the University's Diversity, ADA, and Affirmative Action Administrator Sheila Blackshear advised Perkins that her approved remote telework accommodations had ended. (*Id.* ¶ 27) Blackshear also told Perkins that she should reach out to her supervisor, Sheena Jackson, to schedule a return-to-work date. (*Id.*)

At some point after August 1 and before her scheduled return date, Perkins was hospitalized for an affliction unrelated to the underlying cause of her remote working

4

conditions. (*Id.* ¶ 28) Perkins told the University about her hospitalization and provided a Certification and Letter of Medical Necessity from her doctor, Kendrick Gwynn, MD. (*Id.* ¶ 29) Dr. Gwynn's letter indicated that Perkins had a serious health condition requiring her to work remotely for an additional two weeks. (*Id.*) Based on that letter, Perkins requested that the University grant her two weeks of telework. (*Id.* ¶ 30) Rather than allow Perkins to work remotely, the University granted her, as an ADA accommodation, an unpaid leave of absence through August 12, 2022. (*Id.* ¶ 30)

On or about August 12, 2022, the University denied Perkins's further request for another two-week unpaid leave or continued remote work. (*Id.* ¶ 31) With its denial, the University revoked the accommodation and expected Perkins to return to in-person work. (*Id.* ¶ 32) Perkins asserts that the University never discussed the effectiveness of her telework or other alternative accommodations prior to revoking her telework accommodation. (*Id.* ¶ 43) She also asserts that permitting her to work remotely would not have imposed an undue hardship on the University nor have impaired its operations. (*Id.* ¶ 34)

In the days following the University's revocation of Perkins's telework accommodation, she repeatedly contacted Karen Jarrell in the University's Human Resources Department to notify her that "the on-site in-person accommodations were detrimental to her health." (*Id.* ¶ 46) Perkins asserts that neither Jarrell nor the University addressed her concerns about returning to in-office work. (*Id.*) She also alleges that Jarrell would routinely schedule meetings with her when she was on leave and that Jarrell would intentionally not attend the meetings. (*Id.* ¶ 37) Ultimately, as Perkins would not return to work in-person, the University terminated her employment on October 1, 2022. (*Id.* ¶ 12) Perkins alleges that she has suffered

severe physical, psychological, and emotional injury and incurred significant monetary losses due to the University's actions. (*Id.* ¶ 50)

## II. Procedural History

After the University terminated Perkins, she filed a formal charge of discrimination with the Equal Employment Opportunity Commission ("EEOC"), alleging violations of the Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12101–12117. (*Id.* ¶ 8) The EEOC did not proceed with her complaint and issued her a Notice of Right to Sue, which she received on March 15, 2024. (*Id.*)

On June 10, 2024, Perkins initiated this case by filing the original six-count Complaint. (ECF No. 1) Specifically, she alleged four ADA violations: (1) failure to engage in interactive process and failure to accommodate; (2) retaliation; (3) hostile work environment; and (4) constructive discharge. (*Id.*) These were Counts I, II, III, and IV, respectively. (*Id.*) She also alleged two violations of the Maryland Fair Employment Practices Act, Md. Code Ann., State Gov't §§ 20-606 *et seq.* (West 2025). (*Id.*) Count V charged the University with disability discrimination, while Count VI asserted retaliation. (*Id.*) On October 31, 2024, the University moved to dismiss the case under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). (ECF No. 10)

On December 9, 2024, before the Court could rule on that motion, Perkins filed a First Amended Complaint. (ECF No. 14) The First Amended Complaint contained four counts instead of the original six, as it exchanged the four ADA claims for two claims under Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794. (*Id.*) Specifically, Count I alleged failure to provide reasonable accommodations in violation of Section 504. (*Id.*) Count II alleged

retaliation in violation of the same. (*Id.*) Counts III and IV reasserted the two Maryland Fair Employment Practices Act claims from the original Complaint. (*Id.*) On December 23, 2024, Defendant moved to dismiss the First Amended Complaint. (ECF No. 15).

On May 12, 2025, the Court issued a Memorandum Opinion (ECF No. 22) and Order (ECF No. 23) granting Defendant's Motion to Dismiss the First Amended Complaint (ECF No. 15).[1] As to Counts III and IV, which alleged violations of the Maryland Fair Employment Practices Act, the Court held that sovereign immunity applied and deprived the Court of jurisdiction. (ECF No. 22 at 12) For Count I, alleging failure to accommodate, the Court found that Perkins had failed to state a plausible claim because she had not alleged sufficient facts showing that she was able to perform the essential functions of her job with a telework accommodation. (*Id.* at 16) The Court also found that Perkins failed to plead a plausible claim on Count II because she did not proffer sufficient facts to show causation between Defendant's knowledge of her protected activity and her termination. (*Id.* at 21)

The Court dismissed the entirety of Perkins's First Amended Complaint without prejudice. (*Id.* at 2). It further granted Perkins leave to amend Counts I and II, the putative violations of the Rehabilitation Act, by May 27, 2025.[2] (ECF No. 22 at 2) On May 27, 2025, the deadline to amend, Perkins filed her Second Amended Complaint. (ECF No. 24) The Second Amended Complaint reasserts the two Rehabilitation Act claims and adds factual

---

[1] The Court also denied as moot Defendant's Motion to Dismiss the original Complaint (ECF No. 10). (ECF No. 22; ECF No. 23)

[2] The Court denied leave to amend Counts III and IV of the First Amended Complaint (ECF No. 14) as those Maryland Fair Employment Practices Act claims were barred by Maryland's Eleventh Amendment immunity and there was no set of facts Perkins could have alleged to show that Maryland had waived that immunity. (ECF No. 22 at 12 n.6)

7

allegations to each. (*Id.*) On June 10, 2025, Defendant filed the pending Motion to Dismiss the Second Amended Complaint. (ECF No. 25) Defendant again seeks dismissal under Federal Rule of Civil Procedure 12(b)(6). (*Id.*) The matter is ripe for review.

## STANDARD OF REVIEW

A complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Rule 12(b)(6) of the Federal Rules of Civil Procedure authorizes the dismissal of a complaint if it fails to state a claim upon which relief can be granted. "A Rule 12(b)(6) motion tests the sufficiency of a complaint; it does not, however, 'resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses.'" *King v. Rubenstein*, 825 F.3d 206, 214 (4th Cir. 2016) (quoting *Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999)). To survive such a motion, a complaint must contain facts sufficient to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 684 (2009) (quoting *Bell Atl., Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

Under this plausibility standard, a complaint must contain "more than labels and conclusions" or a "formulaic recitation of the elements of a cause of action." *Twombly*, 550 U.S. at 555. A complaint need not include "detailed factual allegations." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555). It must, however, set forth "enough factual matter (taken as true) to suggest" a cognizable cause of action, "even if . . . [the] actual proof of those facts is improbable and . . . recovery is very remote and unlikely." *Twombly*, 550 U.S. at 556 (internal quotations omitted). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" to plead a claim. *Iqbal*, 556 U.S. at 678. In other

words, the factual allegations in the complaint, taken as true, must "permit the court to infer more than the mere possibility of misconduct" by the defendant. *Id.* at 679.

## ANALYSIS

The University moves for dismissal of the Second Amended Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6), arguing that each of Perkins's claims under Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794, fails to state a plausible claim for relief. (ECF No. 25) The Court addresses that challenge in turn for each of the two Counts of the Second Amended Complaint.

### I.   Count I: Failure to Accommodate

To survive a motion to dismiss on a claim "of failure to accommodate, a plaintiff must show: '(1) that she was an individual with a disability within the meaning of the statute; (2) that the employer had notice of her disability; (3) that with reasonable accommodation she could perform the essential functions of the position; (4) that the employer refused to make such accommodations.'" *Smith v. CRSA*, 12 F.4th 396, 414 (4th Cir. 2021) (quoting *Jacobs v. N.C. Admin. Off. of the Cts.*, 780 F.3d 562, 579 (4th Cir. 2015)). With respect to the third element, the University contends that Perkins has still not put forth a plausible claim in the Second Amended Complaint. (ECF No. 25-1 at 5) Specifically, the University argues that Perkins has not alleged sufficient facts to show that, with reasonable accommodations, she would have been able to perform the essential functions of her role as Assistant Director of Admissions. (*Id.*) Perkins argues that she would have been more than able to accomplish those essential functions with continued remote work. (ECF No. 26-1 at 3) She claims that when she was hired, remote work was standard in her department, and that during that time she had

9

successfully performed her duties. (*Id.*) She further avers that she successfully performed her duties when she worked on a twenty-hour-per-week telework schedule in July 2022. (*Id.*) Perkins argues that her job—meeting with students, interpreting admissions and scholarship policies, and managing customer service—was comprised of tasks that were perfectly capable of being performed remotely. (*Id.*)

These are the same arguments that Perkins made earlier this year in her submission in response to the University's Motion to Dismiss the First Amended Complaint (ECF No. 18). The Court ruled that Perkins had not sufficiently pleaded the failure to accommodate claim. (ECF No. 22 at 16) The Court explained that Perkins's assertion as to the third element, that her job was one that could have been capably handled remotely because it had been handled remotely in 2021 and early 2022, was not sufficient. (*Id.*) It could not overcome the fact that she could not perform her work remotely between February and August 2022 during her FMLA leave of absence. (*Id.*) Perkins attempts in the Second Amended Complaint to bolster her claim for failure to accommodate by saying that but for the University's multiple decisions to grant unpaid leaves of absence in place of continued work-from-home accommodations, she *would have* capably done the essential duties of her job remotely. (ECF No. 24 ¶¶ 56–57) Quite simply, the Second Amended Complaint fails to allege sufficient facts that Perkins could perform the essential functions of her role as the Assistant Director of Admissions even with reasonable accommodation. Based upon the allegations stated by Perkins, it is undisputed that during the last six months of her twelve months of employment, she was on FMLA leave from February 2022 to April 29, 2022, and then on unpaid leave from May 10 to July 5, 2022. (*Id.* ¶ 20–24) After that extensive period of absence from performing any of her duties of

employment, she then worked one month at a reduced, twenty-hour-per-week schedule. (*Id.* ¶¶ 25–27)

Perkins's argument is undercut by her own factual allegations in the Second Amended Complaint. Perkins pleads that from February 2022 through mid-August of that year, she was able to work a maximum six full days, plus at most one month at a reduced twenty-hour-per-week schedule. From February to April 29, Perkins was on FMLA leave. (*Id.* ¶ 20) Drawing a reasonable inference in Perkins's favor, the Second Amended Complaint alleges that she worked the six business days from April 30 to May 9. Beginning on May 10, Perkins received from the University an unpaid leave of absence as an ADA accommodation until July 5, 2022. (*Id.* ¶ 24) Then, from July 6 to August 1, Perkins was allowed to work remotely for twenty hours per week. (*Id.* ¶¶ 25–27) Due to a hospitalization around that time, Perkins sought an extension of her telework accommodation. (*Id.* ¶¶ 28–30) The University denied the accommodation and instead granted Perkins another unpaid leave of absence through August 12, 2022. (*Id.* ¶¶ 28–31) To reiterate, even reading the Second Amended Complaint in the light most favorable to Perkins, she worked at most six full days plus roughly a month of twenty-hour-per-week telework. This timeline undercuts Perkins' argument regarding the third element of the failure to accommodate claim.

There is little in the Second Amended Complaint besides "labels and conclusions" to support her claim to relief. *Twombly*, 550 U.S. at 555. Crucially, there are no well-pleaded facts in the Second Amended Complaint to show that Perkins was accomplishing the essential duties of her job. She only offers the conclusion that she was doing those duties, coupled with her conclusory statement that her job was one that *could* be done at home. (ECF No. 24 ¶¶ 14,

11

21, 56; ECF No. 26-1 at 3) As noted by the University in its Reply (ECF No. 27), the United States Court of Appeals for the Fourth Circuit has explained that the Rehabilitation Act does not mandate that an employer eliminate essential job requirements. *Tyndall v. Nat'l Educ. Ctrs., Inc. of Cal.*, 31 F.3d 209, 213 (4th Cir. 1994). Indeed, the Fourth Circuit, in an earlier opinion, has stated that the Rehabilitation Act does not require an employer to "wait indefinitely for [an employee's] medical conditions to be corrected." *Myers v. Hose*, 50 F.3d 278, 283 (4th Cir. 1995). Quite simply, the University accorded Perkins numerous accommodations and ultimately determined that she could not perform the essential functions of her position while working in a remote capacity. The Motion to Dismiss (ECF No. 25) is GRANTED as to Count I, which is DISMISSED WITH PREJUDICE.

## II.     Count II: Retaliation

"The Rehabilitation Act incorporates the ADA's anti-retaliation provision, which in turn is substantially identical to Title VII's anti-retaliation provisions." *Brady v. Bd. of Educ. of Prince George's Cnty.*, 222 F. Supp. 3d 459, 474 (D. Md. 2016). Thus, courts interpret claims of retaliation under the Rehabilitation Act in a manner consistent with the ADA and Title VII. *Id.* (citing *Haines v. Donahoe*, Civ. No. ELH-10-0293, 2012 WL 3595965, at *10 (D. Md. Aug. 10, 2012), *aff'd* 538 F. App'x 329 (4th Cir. 2013)); *see also Lucas v. VHC Health*, 128 F.4th 213, 225 (4th Cir. 2025). For this reason, once a plaintiff has established the elements of retaliation under the Rehabilitation Act, courts apply the burden-shifting standard elucidated in *McDonnell Douglas Corporation v. Green*, 411 U.S. 792 (1973). A prima facie claim of retaliation under the Rehabilitation Act requires the plaintiff to allege that (1) she engaged in a protected activity; (2) her employer took adverse employment action against her; and (3) the protected activity

was causally connected to the adverse action. *Madison v. Housing Auth. of Balt. City*, No. RDB-21-997, 2021 WL 2936321, at *4 (D. Md. July 13, 2021) (citing *Hoven-Lewis v. Caldera*, 249 F.3d 259, 272–74 (4th Cir. 2001)). The University concedes for this Motion that Perkins engaged in protected activity by requesting leave and reasonable accommodations. (ECF No. 25-1 at 8) The University further concedes for this Motion that terminating Perkins was an adverse action.[3] (*Id.*) The only element at issue, therefore, is the third element: causation. (*Id.*; ECF No. 26-1 at 6) As explained below, Perkins has not sufficiently pleaded causation in the Second Amended Complaint.[4]

In the Second Amended Complaint, Perkins alleges that there was a causal relationship between her protected activities, requesting leave and reasonable accommodations, and her termination on October 1, 2022. "[V]ery little evidence of a causal connection is required to establish a prima facie case of retaliation." *Smith*, 12 F.4th at 417 (quoting *Roberts v. Glenn Insus. Grp., Inc.*, 998 F.3d 111, 127 (4th Cir. 2021)); *see also Strothers*, 895 F.3d at 335. In a retaliation claim, a plaintiff may allege causation by (1) alleging facts that "suggest[] that the adverse action occurred because of the protected activity" or (2) by demonstrating that "the adverse act bears sufficient temporal proximity to the protected activity." *Jennings v. Frostburg State Univ.*, 679 F.

---

[3] In Perkins's First Amended Complaint (ECF No. 14) and in her Response in Opposition to the University's Motion to Dismiss the First Amended Complaint (ECF No. 18), she maintained that she suffered multiple adverse employment actions: (1) revocation of her previously granted telework, (2) denial of subsequent requests to telework; and (3) termination. (*Id.*) In ruling on the University's Motion to Dismiss the First Amended Complaint (ECF No. 15), the Court held that only the termination amounted to an adverse employment action. (ECF No. 22 at 19) By footnote in her Response in Opposition here (ECF No. 26-1), Perkins "continues to maintain . . . for appellate review" that the University took adverse employment actions beyond termination. (*Id.* at 6 n.1)

[4] Because Perkins has not sufficiently pleaded causation, she has not made out a prima facie case of retaliation. Therefore, the Court does not reach the *McDonnell Douglas* analysis.

Supp. 3d 240, 81 (D. Md. 2023) (first quoting *Roberts*, 998 F.3d at 123; then quoting *Laurent-Workman v. Wormuth*, 54 F.4th 201, 218 (4th Cir. 2022)).

When this Court dismissed the First Amended Complaint (ECF No. 22), it ruled that, "[e]ven construing the facts in the light most favorable to Perkins," there was insufficient temporal proximity between Perkins's August 12, 2022 request for remote telework and her October 1, 2022 termination. (*Id.* at 20) Additionally, this Court made clear that the temporal proximity aspect of causality is not focused on the ultimate instance of protected activity and the adverse action (here, seven weeks), but on the gap in time "'between the employer's knowledge of the protected activity and the alleged retaliation.'" (*Id.* (quoting *Roberts*, 998 F.3d at 127)). Thus, the Court explained that the correct timeframe in this case for causation was not seven weeks but five months. (*Id.* at 21) The Second Amended Complaint does not remedy this deficiency.

Here, Perkins argues for an inference of causation based on the same exact timeline plus the "context surrounding [her] termination." (ECF No. 26-1 at 8) As regards the "context" of her termination, Perkins alleges that she had a "long-established remote work accommodation that was abruptly revoked only after she engaged in protected activity—namely, requesting additional leave and submitting updated medical documentation supporting continued telework." (*Id.* (citing ECF No. 24 ¶¶ 28–31, 83)) She also alleges that the University displayed "increased scrutiny" over her telework accommodation and that it gave her inconsistent reasons for revoking the telework accommodation. (*Id.* (citing ECF No. 24 ¶¶ 83–87)). Finally, she alleges that every other person in her department was only required to come into the office for one day per pay period and she was denied a "similar work

14

arrangement after her FMLA leave." (ECF No. 24 ¶ 84) Perkins does not allege that any employee with her work history and extended absences was treated any differently than she was treated by the University. To be clear, the Second Amended Complaint raises no well-pleaded facts showing any retaliatory animus. All Perkins offers are bald conclusory allegations. These allegations are wholly insufficient to make out a plausible claim of causation. The Motion to Dismiss (ECF No. 25) is GRANTED as to Count II, which is DISMISSED WITH PREJUDICE.

## CONCLUSION

For the reasons stated above, the University's Motion to Dismiss the Second Amended Complaint (ECF No. 25) is GRANTED. Perkins's Second Amended Complaint (ECF No. 24) is DISMISSED WITH PREJUDICE.

A separate Order follows.

Date: November 18, 2025

/s/
Richard D. Bennett
United States Senior District Judge